IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THOMAS H. HEIDORF, III | § | |
| DEBTOR(S) | § | CASE NO. 04-39956-H5-7 |
| | § | |
| TEXAS STATE BANK | § | |
| PLAINTIFF(S) | § | ADVERSARY NO. 04-3863 |
| | § | |
| VS. | § | |
| | § | |
| THOMAS H. HEIDORF, III | § | |
| DEFENDANT(S) | § | |

## MEMORANDUM OPINION

Before the Court is the complaint filed by Texas State Bank against Thomas H. Heidorf III objecting to his discharge and to the dischargeability of its debt. The Chapter 7 trustee, Rodney Tow, joins in the 11 U.S.C. § 727 claims against debtor. This Court has jurisdiction over this adversary proceeding pursuant to the provisions of 28 U.S.C. § 157, 11 U.S.C. § 727 and 11 U.S.C. § 523. After trial, the Court finds debtor's discharge is **DENIED**. 11 U.S.C. § 727(a).

## I. Debtor's Background

Debtor is an airline pilot. According to debtor's tax returns, he earned $180,508, in 2002, and $192,247, in 2003. At the time he filed bankruptcy in July

2004, debtor had gross earnings for the year of $128,806.17. Debtor is single with grown children. Debtor's two sons are in their early and mid thirties, one lives in Dallas, the other lives near Houston. Debtor owns a 2 story home which, according to the Harris County Appraisal District, has four bedrooms, two bathrooms, and central heat and air located at 19506 Oak Briar Dr. in Humble, Texas. At the time of debtor's bankruptcy filing, the Harris County Appraisal District valued the home for tax purposes at $103,400, but debtor protested the value and agreed to a value of $75,000 for tax purposes for 2005. Debtor has claimed this home as his homestead for tax purposes until at least 2003.

Debtor also owns 17 acres located at 2101 West Bayshore Road, in Anahuac, Texas. The property consists of two lots for which debtor paid $19,000 for one and $55,000 for the other. Debtor has about $200,000 in a 401k plan to which he contributes about $3,000 per month from his salary. In 1999, debtor borrowed $35,000 from his 401k plan to build a 60 ft. by 120 ft. corrugated metal storage building on the Anahuac property. In addition to debtor's current contributions to the 401k, debtor is repaying this loan through deductions from his salary. In 2000, debtor installed a smaller, 14 ft. by 32 ft., storage building on the Anahuac property which cost about $11,000, which he paid for with a credit card. Debtor has also paid for installation of a road, water, and electricity. Debtor claims he has used the Anahuac

property as his homestead since 2004. The smaller building contains an air mattress, a cooking unit, a sink and a chemical toilet. Debtor rarely stays there overnight, he usually stays at his girlfriend's home in Clear Lake.

Debtor uses the larger storage building to store farm equipment and vehicles which he has purchased and claims he has given to his sons. Among the vehicles which debtor claims to have given his sons are several classic 1960 Plymouth automobiles which debtor bought between 1993 and 1999. Debtor assigned the titles for these cars to his sons, but the assignments have never been recorded with the state. In addition to the cars, debtor claims he gave his sons other property once he had paid for it, such as a motor home, two motorcycles, several tractors, a heavy-duty trailer used to haul equipment, and attachments for a tractor consisting of a cutter, a bush hog and a loader. Debtor paid $27,000.00, for the motor home which he bought within four months of filing bankruptcy. Debtor has given his sons cash within the year prior to filing bankruptcy, but he does not remember how much. Debtor pays $375.00 per month for his grandchildrens' Texas Tomorrow Fund college tuition accounts. Debtor has given his girlfriend more than $1,000 within the year prior to filing bankruptcy.

## II. Bank Debt

Texas State Bank f/k/a Riverway Bank is the holder of a promissory note dated June 7, 1999, executed by debtor in his individual capacity and as president of 60 Palms Farm, Inc., a corporation debtor created to own the boat. The note is in the original principal amount of $494,849.31. Debtor executed a guaranty of the note individually. Debtor, in his capacity as president of 60 Palms Farm, Inc., executed a First Preferred Ship Mortgage creating a security interest in favor of the bank in a vessel named the "Starship Six."

Debtor paid the bank's loan for two years and then met with the bank when his income was interrupted. Debtor testified that he had attempted to increase his income by seeking to fly larger aircraft for a higher rate, but inadvertently decreased his income because larger aircraft fly international routes which allow fewer flying hours than his previous routes. The bank offered to refinance the boat, but debtor asked the bank to discount the note. The bank declined to do so and the debtor told the bank that he was returning the boat. The bank tried to sell the boat by listing it with a broker, advertising in national boating magazines and on website, and by displaying it for sale on location at Southshore Harbor. When the bank got an offer on debtor's boat the purchaser needed to trade in an existing boat which the bank agreed to do as part of the sale of debtor's boat. The bank claims the expenses associated with the

sale of the second boat as actual expenses expended for the sale of debtor's boat. The Court finds that the sale of collateral was done in a commercially reasonable manner. After all offsets and credits, and including attorneys fees, the bank holds a claim in the amount of $205.275.67.

Debtor obtained financing to acquire the Starship Six through the services of a loan broker, Lighthouse Marine & Aircraft. In connection with his loan application, debtor executed a personal financial statement. Debtor testified that he signed the document in blank and sent it to the broker and that he never met with any bank representative in connection with obtaining the loan.

The personal financial statement is a pre-printed form with a list of assets and debts with blanks beside each for values to be handwritten. In addition, there is space to list other assets and debts. Debtor's statement contains handwritten entries for a tractor, trailer, other equipment, and a steel building. Likewise there are handwritten entries for liabilities consisting of a truck, house, boat, tractor and land. The Court finds that debtor prepared the financial statement and provided the information, including the values, shown. Among the items shown on the statement are securities valued at $210,000, mortgages owned valued at $160,000, and automobiles valued at $150,000. The financial statement states that debtor's assets total $1,067,500, and liabilities total $377,600, with a net worth of $690,000. Debtor does not have a clear

explanation for any of these entries on the financial statement. Debtor has testified that he did not own $150,000 in automobiles unless it was a Corvette that he gave one of his sons in 1996. Debtor believes that the securities listed mean his 401k plan. Debtor claims that the entry for mortgages owned, although listed in the asset column, is really the mortgages for which he is liable on his home and the Anahuac property.

Debtor testified that the bank did not rely on the financial statement in extending credit to him. Debtor contends that the bank relied solely on his income stream and cash flow which they determined from his tax returns, employment records and credit report. The bank officer testified that the bank relied on all of the paperwork forwarded by the loan broker in extending credit to debtor.

## III. Debtor's Bankruptcy Filing

Debtor filed his chapter 7 case on July 14, 2004. At the time of filing, debtor filed his schedule of assets and liabilities and statement of financial affairs. On September 2, 2004, debtor filed amended schedules and statement of financial affairs.

Despite debtor's claim that the Anahuac property is his homestead, his bankruptcy petition lists his street address as 19506 Oak Briar Dr. Humble, Texas, and his county of residence as Harris County. Then, in Schedule C, debtor listed both of his real properties, Oakdale and Anahuac, as exempt homesteads. Debtor scheduled the Oakdale property for a value of $65,000, even though at the time it was

valued by the Harris County Appraisal District at over $100,000. Debtor scheduled the Anahuac property for a value of $42,000, even though he paid $74,000 for the land alone and has invested many more thousands in adding improvements.

Despite his actual gross earnings in 2002 and 2003 of close to $200,000 each year, on his initial statement of financial affairs, debtor listed his gross income for 2002 as $82,585, and for 2003 as $78,360. In his amended statement of affairs, debtor listed his income for those years as $152,550.00, and $174,143.00, amounts which are nearer to his actual earnings, but which are nevertheless inaccurate as they deduct from his airline income debtor's expenditures in connection with his Anahuac property, which, for tax purposes, debtor claims is a farm.

On his initial Statement of Financial Affairs, debtor checked "none" in response to question 7, concerning whether he had made any gifts within the year preceding bankruptcy; "none" to question 10, concerning whether he had made any transfers other than in the ordinary course of business or financial affairs of the debtor within one year immediately preceding filing bankruptcy; and "none" to question 14, requiring debtor to list all property owned by another person that the debtor holds or controls. Debtor did not disclose his transfers of cash to his girlfriend, grandchildren's tuition fund, or his sons. Debtor did not disclose that he owns a

storage building on his Anahuac property or any of the property he holds in that storage building that he claims he has given to his sons.

On his amended Statement of Financial Affairs, debtor listed his transfer of his motor home to his sons. Debtor also disclosed that he subsequent to his bankruptcy filing, in August 2004, he closed an account at Chartway Federal Credit Union. Debtor blames the errors in his schedules on his attorneys.

## IV. Debtor's Records

Since debtor's default, the bank has sought records from debtor to substantiate his assets and disposition of assets. In response, debtor claims that he down-sized after September 11, 2001, and no longer keeps financial records. At his 2004 examination, debtor provided the bank with one 401k statement that he had printed from the internet, two tax returns and two paycheck stubs. Debtor does not keep any written records of his day to day finances, his $2,000 in monthly unreimbursed travel expenses, his home, his farm, his 401k plan, his credit cards or from any financial institutions. Debtor deals with his finances over the internet and disposes of any written financial information he receives.

## V. Dischargeability - Section 523(a)(2)(B)

Bankruptcy Code § 523(a)(2)(B) excludes from discharge debts for an extension of credit to the extent obtained by the use of a written statement that is

materially false, respecting the debtor's financial condition, on which the creditor to whom the debtor is liable for such credit reasonably relied and that the debtor caused to be made or published with intent to deceive. The Court finds that debtor's written financial statement submitted to the bank in connection with the boat loan was materially false because it overstated the value of debtor's assets. The Court finds that debtor submitted the financial statement intending that a lender would rely on it in extending credit for the purchase of a boat. The Court finds that the bank reasonably relied on the financial statement in extending credit to the debtor. The Court finds that debtor's debt to the bank is not dischargeable under 11 U.S.C. § 523(a)(2)(B).

## VI. Discharge - § 727(a)

A debtor may be denied a discharge under 11 U.S.C. § 727 (a), if the debtor has: (1) with the intent to hinder, delay, or defraud a creditor or an officer of the estate, transferred, removed, destroyed, mutilated, or concealed property of the debtor within one year prior to bankruptcy or property of the estate post-petition; (2) concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act was justified; (3) knowingly and fraudulently in connection with the case made

a false oath or account or (4) has failed to explain satisfactorily any loss of assets or deficiency of assets to meet his liabilities. 11 U.S.C. §§ 727(a)(2), (3), (4) and (5).

The Court finds that debtor's discharge is denied under these sections. The Court finds that with the intent to defraud creditors, debtor concealed property in his Anahuac storage building which he claimed to have given to his sons. Debtor paid for and transferred a motor home to one of his sons just before filing bankruptcy. Likewise, with the intent to defraud the bankruptcy trustee, debtor concealed the existence of these items which became property of the estate when he filed bankruptcy.

In his schedules and statements of affairs debtor was required to list the items of property stored at Anahuac in order to disclose that he owned them, had transferred them, or held them for the benefit of others. Likewise, debtor was required to list his contributions to his childrens' college tuition accounts, his cash gifts to his sons, and his cash gifts to his girlfriend. The Court finds that debtor knowingly and fraudulently omitted this information from his schedules and statements of affairs filed under penalty of perjury, and thereby made a false oath in connection with the case. Likewise, debtor was required to accurately state the values of his real properties and salary history. The Court finds that debtor knowingly and fraudulently understated this information on his schedules and statements of affairs.

The Court finds that debtor's failure to retain written information concerning his financial affairs, property ownership, or property transfers is not justified in this case. Debtor's explanation that he began disposing of his records after September 11, 2001, because he wanted to downsize and simplify is not credible in light of his unaltered, continuing acquisition of material possessions since that time. Further, according to debtor's schedules, he first paid an attorney for a consultation concerning filing bankruptcy in April 2004, three months prior to filing his petition. Even a cursory review at that time of the requirements of schedules and statement of affairs would have alerted debtor to the need to resume accumulating financial records.

Lastly, debtor's explanation of his deficiency of assets to meet his liabilities is unsatisfactory. Since his default on the bank debt in July 2001, debtor has funded the payments on both his home and the Anahuac property, funded improvements to the Anahuac property, purchased vehicles and farm equipment, funded his grandchildren's college tuition accounts, made contributions to his 401k plan, and

given gifts of cash to his children and girlfriend. Debtor had and has the financial ability to repay his creditors. The Court finds that debtor's discharge is **DENIED**.

Signed this 3 day of March, 2006 at Houston, Texas.

KAREN K. BROWN
CHIEF UNITED STATES BANKRUPTCY JUDGE